## HARBER v. LINCOLN.

No. 25824. Nov. 19, 1935.

Rehearing Denied Dec. 10, 1935.

Biggers & Biggers, for plaintiff in error.

Davis & Patterson and Thos. J. Horsley, for defendant in error.

PER CURIAM. Plaintiff in error instituted this suit in the superior court of Seminole county, Okla., in which he asked recovery upon a promissory note in the principal sum of $2,500, dated at Seminole, Okla., on April 23, 1930, due June 7, 1930, with interest at 8 per cent. per annum after maturity bearing the name of one Peter Lincoln, the defendant in error. The signature of Peter Lincoln is witnessed by Ruth Campbell, and the note on the reverse side bears a credit of $50 entered on 5-3-30 and bears the further indorsement "5-4-30, without recourse * * * W. A. Bishop." This note is attached to the petition of plaintiff in error and is marked

"Exhibit A." The petition further alleges that W. A. Bishop, for value, before maturity, sold and delivered the note to plaintiff in error, W. E. Harber. The answer of the defendant in error interposes two defenses. The first defense puts in issue the factum of the note. The second defense puts in issue the claim of innocent purchaser for value before maturity on the part of the plaintiff in error, and also pleads a lack of consideration to support said obligation. A trial was had, resulting in a verdict for the defendant, and plaintiff in error, who was the plaintiff below, prosecutes this appeal.

Plaintiff in error says that error was committed in submitting to the jury at all the defense of lack of consideration, for the reason that the evidence was insufficient to warrant the submission of such issue to the jury, and that the court therefore committed reversible error in giving instructions numbered 3, 4, and 5, and for failure to give plaintiffs in error's requested instruction No. 1.

It is virtually conceded by counsel that instructions numbered 3, 4, and 5, given by the trial court in its general charge, correctly state the law, but that such have no application to this case and the giving of the same was error, and that the court likewise committed reversible error in refusing to give plaintiff in error's requested instruction No. 1, which would in effect confine the issues to the sole question of whether or not Peter Lincoln signed the note in question, and whether or not there was a voluntary meeting of the minds upon one and the same thing, to wit, the note declared upon. We, therefore, conclude that the assignments of error in this case may in the main be determined by answering one question, Did the evidence introduced by the defendant in error warrant the court in submitting to the jury the question of lack of consideration? As stated, the note in question was dated April 23, 1930, and by its terms was made due and payable on June 7, 1930. The note was indorsed by Bishop, the original payee, and was by Bishop delivered to him; that the consideration for said note arose out of a land deal between plaintiff in error and Bishop. The date accompanying the indorsement of Bishop does not seem to have been placed thereon at the time the indorsement was made, but was added thereafter by pencil notation, after plaintiff in error had consulted other data which tended to refresh his memory as to the time of said transfer.

The defendant in error belongs to the negro race, and at the time of the trial he said he was "right now about 86 years old" and almost totally blind. The evidence disclosed that he had been unable to read since about the years of 1915 and 1916, and in all business transactions he depended upon others to inform him of the nature and contents of written instruments.

It was further contended that the original payee in the note, who is by profession an attorney, had for a number of years represented the defendant in error; that due to the age and infirmity of the defendant in error and his then wife, it was necessary for their attorney to look after the most trifling details of their business affairs, and it is stoutly maintained throughout the evidence that at the time the note is alleged to have been signed, the defendant in error owed his lawyer nothing; that in all of the cases and matters in which Bishop had acted as attorney for the defendant in error the fee had been paid; that at the time the note is alleged to have been signed the relation of debtor and creditor in no way existed between said parties, and that the note was therefore void for lack of consideration. Peter Lincoln stoutly maintained throughout the trial that he did not sign the note in question at all. His position at the trial was, however, that if his name was attached to the same, it was not put there by him knowingly and with the understanding that it was a note. In other words, it is contended by the defendant in error that the circumstances under which the note was signed, if at all, amounted to forgery in the second degree (section 2140, Oklahoma Stats. 1931). The contention that the signature of the maker to a note is procured by false representations as to the character of the paper itself, the maker being guilty of no negligence, may be interposed against the enforcement of the note, although it be in the hands of an innocent purchaser before maturity.

First National Bank of Watonga v. Wade et al., 27 Okla. 102, 111 P. 205. This case is very much in point. It would seem that an illiterate, colored woman, over 70 years of age, was by false and fraudulent representations induced to sign a certain negotiable promissory note and mortgage securing the payment of the same, under the belief that she was signing another character of instrument. It was held that such note was unenforceable in the hands of a bona fide holder. In the body of the opinion, the court said:

"We are inclined to agree with counsel that there was not sufficient evidence adduced to show bad faith on the part of their clients in acquiring these notes and mortgages. This court is committed to the doctrine that bad faith, not merely a notice of circumstances sufficient to put a prudent man on inquiry, is necessary to defeat recovery by the holder of negotiable paper, whose right accrued before maturity. Forbes v. First National Bank, 21 Okla. 206, 95 P. 785. But in the case at bar the jury found that the signature of the maker was procured by false representations as to the character of the paper itself, and that the maker was not guilty of any negligence in signing such papers. In that class of cases the rule laid down in 1 Page on Contracts, 116, is applicable:

" 'If the instrument is negotiable, and in the hands of a bona fide holder, the question of negligence is held the test of liability. If the maker signed without knowing the nature of the instrument and was free from negligence, as in the case of illiteracy, as where he could not read, and a note for $1,-000 was read to him as $100, and the name of the payee was changed, the note is unenforceable, even in the hands of a bona fide holder.'

"Counsel for defendants in error cite a great many cases in support of the rule laid down by Mr. Page. We have examined most of them, and believe that the rule is amply supported. Practically all of the cases on this question are collected in notes to Yakima Valley Bank v. McAllister (Wash.) 1 L. R. A. (N. S.) 1075, and Green v. Wilkie, 98 Iowa, 74, 36 L. R. A. 434, 66 N. W. 1046."

It was conceded that in an action upon a promissory note, a mere suspicion will not impeach or impair the holder's title, nor will knowledge of the facts or circumstances which are deemed sufficient to put a prudent man upon inquiry be sufficient, but the situation here is quite different. If the testimony introduced on behalf of the defendant in error upon this point is to be believed, then there was never a meeting of the minds upon one thing. In fact, the note never had existence in the sense of the minds of the parties meeting to give it validity. In fact, the testimony in support of the defense, if true, absolutely destroyed the existence of the instrument as a monetary obligation.

We do not overlook the fact that in making a defense like this the defendant must be free from negligence upon his part.

Again, in the case of Chickasaw Loan & Trust Co. v. Mills, 59 Okla. 230, 158 P. 1156, it is said:

"A note in the hands of an innocent purchaser, produced by fraud and deceit, when defendant is guilty of no negligence, is invalid, since it is not the contract of the parties."

See, also, Baldridge v. Sunday, 73 Okla. 287, 176 P. 404; Thompson v. Coker, 112 Okla. 268, 241 P. 486; Greene v. Wilkie, 98 Iowa, 74, 66 N. W. 1046, 36 L. R. A. 434, 60 Am. St. Rep. 184.

It is not seriously contended in the instant case that the evidence was insufficient to warrant this defense being submitted to the jury, or that the same was erroneously submitted by the court in its instructions, but it is contended that the court committed reversible error in submitting the latter issue, to wit, failure of consideration, and it is insisted that the jury was confused by the submission of such issue, and that, on the whole, plaintiff in error was deprived of a fair and impartial trial. The determination of this question settles the appeal.

The evidence in the record, which tends to impeach the good faith of the plaintiff in error, and which would in any manner affect the title of plaintiff in error to the note, was, in the main, adduced by the witness Short. This witness says that he is also an attorney at law, and was for a considerable time associated with Mr. W. A. Bishop as partners in the law practice, and that there was located in the offices occupied by said lawyers a box or container where notes and like valuable papers of the firm were deposited for safekeeping; that there never was but one note held by them which purported to have been signed by Peter Lincoln, and this witness says that he saw this note in the note box or container at a time which was long after the note became due according to its terms, and he further says that Bishop told him that he intended to return the note to Peter Lincoln, which was the reason why the same was not taken into account as a partnership asset at the time of the dissolution thereof. In our judgment, this testimony is material for the reason that it is asserted by plaintiff in error that at the time he purchased and became the owner of the note, on, to wit, May 4, 1930, he acquired actual, physical possession of the same, and his claim of purchase of the note by negotiation was bottomed in part upon actual delivery at the time. The evidence of Short tended to impeach this transaction contended for by plaintiff in error, and, if true, it tended to show that said note was not actually delivered on May 4, 1930, but that the same was in the possession of the original

holder thereof and being kept in a place in the original holder's office where like valuable papers were stored, long after the due date thereof. Was this evidence sufficient to open up the question of lack of consideration against the plaintiff in error? We think it was.

It would seem to be the general rule that delivery of a negotiable instrument is an essential, integral part of the transaction of negotiation; that delivery is generally held to be essential to complete a legal transfer of a negotiable instrument. The rule is succinctly stated in vol. 8 of Corpus Juris, sections 1 and 2, page 346, in the following language:

"Delivery of the instrument forms part of the contract of indorsement, as well as of transfer by assignment, and it is essential in general to its complete legal transfer. It is not necessary, however, that indorsement and delivery should be simultaneous, although the transfer will take effect only after indorsement and delivery, but delivery cannot be made after the death of the indorser."

"The delivery must be made to a person as indorsee in order to constitute him an indorsee. It is essential that there be an intention on the part of the holder to relinquish his possession of the instrument for the purpose of negotiation. Obtaining it by duress or fraud, or by taking possession of it without any intention on the holder's part to make a delivery, is insufficient. Actual delivery, however, is not necessary, constructive delivery having been held sufficient. On the other hand, a mere intention to deliver, not accompanied by facts sufficient to constitute a constructive delivery, is insufficient."

This rule seems to obtain quite generally in the American states, irrespective of the Negotiable Instruments Act.

In 3 R. C. L. section 175, page 967, the rule is stated as follows:

"A delivery of a bill or note is necessary to its transfer whether by indorsement or otherwise. So a note may be indorsed by the payee, yet if not delivered to someone as indorsee or holder the title remains in the payee who still is its holder, and no contract whatever from such indorsement is created or implied. An indorsement of a negotiable note to two persons, payable one-half to each, and delivery to one for the benefit of both, vests a valid title in both,

although the other did not accept the transfer until afterward, and they may maintain a joint action."

See, also, Horn v. Nicholas, 139 Tenn. 453, 201 S. W. 756, L. R. A. 1918E, 157, and note. In this case, it is held that delivery is essential to transfer. It may also be observed that in the state of Tennessee exists the Negotiable Instruments Act (Code Tenn. 1932, sec. 7325 et seq.) in the same form as in Oklahoma (St. 1931, sec. 11293 et seq.).

The plaintiff in error undertook to impeach the testimony of the witness Short by showing contradictory statements and by showing other conditions which tended to involve him personally, but it must be observed that it was within the exclusive province of the jury to believe or disbelieve this man Short as well as any other witnesses who testified in the trial, and the verdict of the jury has answered this question for us, and we are bound by the answer when we once conclude that there is sufficient evidence in the record to support the issue.

The instructions complained of quite ably presented to the jury the issues, and are most favorable to plaintiff in error.

We are, therefore, constrained to hold and decide that the evidence adduced on the part of the defendant in error was sufficient to take the case to the jury upon the two issues—the factum of the note and consideration for the note and the verdict of the jury having determined both of these issues, and finding no error in the record, the judgment of the trial court is in all things affirmed.

The Supreme Court acknowledges the aid of Attorneys O. H. Searcy, Arden E. Ross, and M. H. Silverman in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Searcy and approved by Mr. Ross and Mr. Silverman, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J. and RILEY, BUSBY, and GIBSON. JJ., concur.