T.C. Memo. 2007-105

UNITED STATES TAX COURT

IN TOUCH PROPERTIES, LLC, DAVID ENGLAND, TAX MATTERS PARTNER,
Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent.

Docket No. 9809-05.                    Filed April 30, 2007.

<u>Eugene P. de Verges</u>, for petitioner.

<u>Gary L. Bloom</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent issued a Notice of Final

Partnership Administrative Adjustment (FPAA) for 2000 pursuant to

section 6223[1] to the Tax Matters Partner (TMP) of In Touch Properties, LLC (In Touch), a limited liability company classified as a partnership for Federal income tax purposes.[2] In the FPAA, respondent disallowed deductions claimed by In Touch for professional fees, marketing expenses, consulting fees, and amortized startup expenditures; determined that the members' at-risk amount under section 465 must be reduced by $176,818; determined that the total capital contributed to In Touch as of December 31, 2000, was $50,000; and determined that a computational adjustment to net earnings (loss) from self-employment must be made. A petition for a readjustment of partnership items was filed on behalf of In Touch. Because the petition did not identify a TMP or reflect that it was filed by the TMP, we ordered In Touch to identify its TMP. On June 13, 2005, we received and filed a Notice of Identification of Tax Matters Partner, which identified David England as the TMP. We

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Although In Touch had fewer than 10 members during 2000, it did not meet the definition of a small partnership under sec. 6231(a)(1)(B) because one of its members was a passthrough entity. See sec. 6231(a)(1)(B)(i); sec. 301.6231(a)(1)-1(a)(2), Proced. & Admin. Regs. Consequently, In Touch is an entity subject to the partnership audit and litigation procedures of secs. 6221-6231.

shall refer to Mr. England in his capacity as In Touch's TMP as petitioner.

The parties tried and briefed the following issues:

(1) Whether consulting fees, marketing expenses, professional fees, and startup expenditures claimed by In Touch on its 2000 return were properly accrued in 2000 and/or adequately substantiated;

(2) whether promissory notes contributed to In Touch by its members are properly included in calculating the members' bases in In Touch; and

(3) whether promissory notes contributed to In Touch by its members are properly included in calculating each member's at-risk amount under section 465(a).

For reasons explained, infra, we decide only issue (1) in this opinion.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties are incorporated herein by this reference.

Background

In Touch is an Oklahoma limited liability company (LLC) that was organized and formed by Lloyd Gilbert, Mark Hanna, and David

England on January 6, 2000.[3]  In Touch's stated business objective is to create, protect, and develop the value of licensing agreements associated with the "ALPHA Critters".  The ALPHA Critters are cartoon characters of each letter of the alphabet designed to provide parents and educators a unique and entertaining alternative to the traditional methods of teaching children how to read.  In Touch commenced the active conduct of its business on June 1, 2000.  At all relevant times, In Touch used the accrual method of accounting for Federal income tax purposes.

In Touch timely filed its 2000 Form 1065, U.S. Return of Partnership Income, in October 2001, pursuant to two extensions of time to file.  On its return, In Touch claimed deductions totaling $277,560, including $160,000 for consulting fees, $22,990 for marketing expenses, $59,615 for professional fees, and a $15,711 amortization deduction.[4]  In Touch's 2000 Form 1065

---

[3] Its principal place of business was in Tulsa, Okla., when the petition in this case was filed.

[4] In Touch elected, under sec. 195(b), to amortize startup expenditures totaling $134,664 for a period of 60 months beginning in June 2000.  The startup expenditures that In Touch claimed on its 2000 partnership return consisted of marketing expenses of $17,423, rent of $15,000, printing costs of $111, bank charges of $20, meals and entertainment of $277, and consulting fees of $101,833.

showed a net loss of $276,560,[5] which was allocated to its members as follows:

| Partner | Share of loss |
| --- | --- |
| Lloyd Gilbert | $30,000 |
| David England | 121,560 |
| Mark Hanna | -0- |
| Jim Coates | 25,000 |
| Abraham Joseph | 50,000 |
| Reebud Resources | 50,000 |
| Total | 276,560 |

Disputed Adjustments

On July 24, 2002, respondent commenced an examination of In Touch's 2000 partnership return by mailing both an appointment letter and an Information Document Request (IDR) to petitioner. On September 9, 2002, respondent issued a second IDR to petitioner. Among other things, the IDRs requested documentation to substantiate the consulting fees, marketing expenses, professional fees, and startup expenditures claimed on In Touch's 2000 return.

With respect to the consulting fees, respondent requested invoices and other documentation substantiating payment dates and detailing the services provided to In Touch. In response, In Touch produced Letters of Understanding (Letters) dated November 10, 2000, with respect to Beverly Stool, Jeff Giddings, and Gene

---

[5] In Touch reported total income of $1,000 and total deductions of $277,560 on its 2000 partnership return.

Longcrier (the consultants).  The Letters were not signed by the consultants.[6]  The Letters purported to summarize the terms of a consulting/employment arrangement with In Touch, including the amount of compensation and benefits to be paid to the consultants.  Each Letter contained the following statement: "Payments will be deferred until adequate funding can be obtained."[7]  In Touch provided no other documents to respondent to substantiate the consulting fees claimed as ordinary and necessary business expenses and/or as startup expenditures.

With respect to marketing expenses, respondent requested receipts and invoices, the business purpose of these expenses, and proof of payment.  The only documentation produced by In Touch in response to this request was a typed list of expenses without any accompanying receipts or invoices.

With respect to professional fees, respondent requested detailed invoices for professional services rendered, the dates of service, and canceled checks or receipts to prove payment.  In Touch submitted typed summaries of the professional fees that failed to list the date and type of services provided.

---

[6] The record contains no evidence that the Letters were ever delivered to the consultants.

[7] As of the trial date, In Touch had not paid the consulting fees it accrued as deductible expenses and/or startup expenditures.

On March 7, 2005, respondent sent petitioner an FPAA determining adjustments to the above expenses.  In the FPAA, respondent determined that In Touch had overstated its deductions for consulting fees, marketing expenses, professional fees, and amortization.[8]  Respondent also determined that the at-risk amounts of In Touch's members must be reduced and that the capital contributed by In Touch's members as of December 31, 2000, was $50,000.

Tax Court Litigation

On May 27, 2005, petitioner filed his petition for readjustment of partnership items.  A trial was held in Oklahoma City, Oklahoma, on March 9, 2006.

Petitioner, who was a member of In Touch during 2000, was the only witness who testified at trial on In Touch's behalf. Petitioner, over respondent's objection, attempted to introduce copies of seven promissory notes, each dated December 31, 2000.[9] The promissory notes were as follows:

---

[8] Respondent allowed In Touch's startup costs of $11,408, consisting of meals and entertainment of $277, bank charges of $20, printing costs of $111, and rent of $11,000.  Respondent recomputed In Touch's allowable amortization expense deduction for 2000 ($11,408 x 7/60 = $1,331).

[9] Petitioner also introduced a promissory note (Exh. 17-P) that he had executed in favor of In Touch.  Respondent did not object to this exhibit.

| Exhibit No. | Obligor | Obligee | Amount |
|-------------|---------|---------|--------|
| 12-P | In Touch | Beverly Stool | $80,000 |
| 13-P | In Touch | Jeff Giddings | 60,000 |
| 14-P | In Touch | Gene Longcrier | 48,000 |
| 15-P | In Touch | Curzon, Cumbey | 33,615 |
| 16-P | In Touch | Eugene de Verges | 15,000 |
| 18-P | Lloyd Gilbert | In Touch | 30,000 |
| 19-P | James Coates | In Touch | 25,000 |

Although we initially deferred ruling on the admissibility of the promissory notes, respondent's counsel withdrew his objection to Exhibits 12-P, 13-P, and 14-P after he introduced the original promissory notes as Exhibits 22-R, 21-R, and 20-R, respectively.  In his posttrial brief, respondent conceded that, under Federal Rule of Evidence 901(a), petitioner properly authenticated the remaining promissory notes containing the signatures of James Coates and Lloyd Gilbert.  Consequently, we admit Exhibits 15-P, 16-P, 18-P, and 19-P.

Petitioner introduced three of the promissory notes, Exhibits 12-P, 13-P, and 14-P, to substantiate the consulting fees deducted and amortized as startup costs on In Touch's 2000 return and in support of his contention that the fees in question were properly accrued in 2000.  However, petitioner never delivered the promissory notes to the consultants and did not introduce any evidence to describe the dates, nature, and amounts of the services allegedly provided by the three consultants who were the obligees of the notes.

Petitioner introduced two promissory notes, Exhibits 15-P and 16-P, to substantiate the professional fees deducted on In Touch's 2000 return and in support of his contention that the fees in question were properly accrued and deducted in 2000. However, petitioner did not introduce any evidence to describe the dates, nature, and amount of the services allegedly provided by the obligees of the promissory notes.

Petitioner introduced three promissory notes, Exhibits 17-P, 18-P, and 19-P, to substantiate alleged additional capital contributions and at-risk amounts by three of In Touch's members: petitioner, Lloyd Gilbert, and James Coates. The total principal amount of the three notes coincides precisely with the three members' distributive shares of the net loss claimed by In Touch on its 2000 return. Petitioner testified that he executed his note on December 31, 2000, as a guaranty of In Touch's obligations to the consultants and professionals to whom In Touch allegedly owed payment as of December 31, 2000. However, petitioner did not introduce any evidence regarding the purpose of the Gilbert and Coates promissory notes.

OPINION

I. Burden of Proof

The Commissioner's determinations are generally presumed to be correct, and the taxpayer must prove by a preponderance of

evidence that those determinations are erroneous. Rule

142(a)(1); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

However, a taxpayer can shift the burden of proof to the

Commissioner under section 7491(a) if the taxpayer satisfies the

requirements of section 7491(a)(2).[10]

Because the record does not support a finding that In Touch

or its TMP maintained required records and substantiated the

items claimed on its 2000 return, we conclude that petitioner did

not satisfy the requirements of section 7491(a). Therefore, the

burden of proof remains with petitioner on all issues.

II. <u>Accrual of Consulting Fees</u>

Section 461(a) states that a deduction must be taken in the

proper taxable year under the taxpayer's method of accounting.

Accrual method taxpayers generally become entitled to a deduction

when all the events have occurred to establish the fact of the

liability and the amount of such liability can be determined with

reasonable accuracy. Sec. 461(h)(4); sec. 1.461-1(a)(2), Income

Tax Regs. To be properly accruable under the "all events test",

---

[10] Under sec. 7491(a)(2), a taxpayer must prove: (1) The
taxpayer has complied with the Code's substantiation
requirements; (2) the taxpayer has maintained all required
records; and (3) the taxpayer has cooperated with reasonable
requests by the Commissioner for witnesses, information,
documents, meetings, and interviews.

(1) a liability must be binding and enforceable, (2) the liability must not be contingent on a future event, (3) the liability must be certain as to amount, and (4) the debtor must have a reasonable belief that the liability will be paid.  United Control Corp. v. Commissioner, 38 T.C. 957, 967 (1962).  In addition, section 461(h)(1) provides that in determining whether an amount has been incurred with respect to any item during a taxable year, "the all events test shall not be treated as met any earlier than when economic performance with respect to such item occurs."  See also Restore, Inc. v. Commissioner, T.C. Memo. 1997-571 n.5, affd. without published opinion 174 F.3d 203 (11th Cir. 1999).

Respondent argues that the consulting fees deducted by In Touch as business expenses and/or included as startup expenditures in calculating its amortization deduction were not properly accruable because a contingency existed as to their payment.  In Putoma Corp. v. Commissioner, 66 T.C. 652, 659-663 (1976), affd. 601 F.2d 734 (5th Cir. 1979), a corporation's obligation to pay compensation to its shareholder-employees was not properly accruable because payment of the salaries depended upon the future profits of the company.  The obligation to pay salaries was not fixed since payment was contingent on the availability of funds.  Id. at 663.

Petitioner acknowledges that the Letters defer payment until adequate funding can be obtained. Petitioner argues, however, that the Letters represent only outlines of employment contracts that In Touch might execute in the future and do not represent a complete statement of the rights and obligations between the consultants and In Touch. Moreover, petitioner contends that the Letters do not refer to any consulting work performed before the finalization of an employment agreement and that no contingency or deferral exists as to liabilities due for past services. Petitioner argues that the consultants invoiced In Touch for the services they rendered, and In Touch responded by issuing promissory notes as payment. These notes, petitioner believes, clearly reflect that the amounts claimed are fixed and immediately payable.

Petitioner's arguments are not supported by the record. In Touch did not have the necessary funds to pay the consultants. According to the only consultant who testified at trial, a representative of In Touch told him that he would be paid once In Touch was financially capable of doing so. In reliance on this statement, the consultant did not send any invoices to In Touch for the service he rendered. The consultant also testified that he did not receive the executed original of In Touch's promissory

note, which allegedly was executed to guarantee payment of the consultant's fees.

The record supports an inference that none of the promissory notes allegedly executed on behalf of In Touch in favor of the consultants was ever delivered to the consultants. Petitioner produced the original promissory notes in response to a subpoena duces tecum issued by respondent before trial. It is reasonable to conclude from the fact that petitioner had the original promissory notes in his possession that the original promissory notes allegedly executed for the benefit of the consultants were never delivered to the consultants. Under Oklahoma State law, delivery is an essential element to complete the legal transfer of a negotiable instrument such as a promissory note. Harber v. Lincoln, 51 P.2d 967, 969 (Okla. 1935).[11] Because petitioner failed to prove that In Touch delivered the promissory notes to their intended recipients, petitioner has failed to prove that

---

[11] Both execution and delivery are prerequisites to the validity of a note. Luker v. Kells, 411 P.2d 511, 515 (Okla. 1966). Under Oklahoma law, the issuance of an instrument is defined as "the first delivery of an instrument by the maker or drawer, whether to a holder or nonholder, for the purpose of giving rights on the instrument to any person." Okla. Stat. Ann. tit. 12A, sec. 3-105(a) (West 1998). Delivery is deemed to occur upon a "voluntary transfer of possession." Okla. Stat. Ann. tit. 12A, sec. 1-201(14) (West 2004).

the promissory notes were valid negotiable instruments under State law.

Finally, petitioner failed to produce credible evidence to prove the nature and extent of the consulting services provided to In Touch during 2000 or to prove that the economic performance requirement of section 461(h)(1) was satisfied with respect to the consulting fees claimed by In Touch on its 2000 return. Consequently, we hold that petitioner failed to demonstrate that respondent's disallowance of In Touch's claimed consulting fees was erroneous, and we sustain respondent's determination.

III.  Substantiation of Expenses

Deductions are a matter of legislative grace, and the taxpayer must clearly demonstrate entitlement to any deductions claimed.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). A taxpayer is obligated to keep records sufficient to allow the Commissioner to establish the correct amount of the taxpayer's deductions.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  A taxpayer must produce those records upon request for inspection by authorized internal revenue officers or employees.  Sec. 7602(a); sec. 1.6001-1(e), Income Tax Regs.  If upon examination the Commissioner disallows a business expense deduction, the taxpayer bears the burden of introducing evidence to substantiate the claimed deduction.  Rule 142(a); see also Wilson v.

Commissioner, T.C. Memo. 2001-301; Joseph v. Commissioner, T.C. Memo. 1997-447. If the taxpayer claims a deduction but cannot fully substantiate it, we may estimate the allowable amount if there is sufficient evidence in the record to provide a basis for the estimate. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see also Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Petitioner failed to substantiate the business expenses and startup expenditures disallowed by respondent. At trial, petitioner introduced only a brief summary of expenses and two promissory notes purportedly issued as payment for professional services. None of those documents established the dates, description, or business purpose of the expenses. The evidence offered was completely inadequate to substantiate petitioner's claimed expenses as required by section 6001 and related regulations.

The complete absence of credible evidence in the record also precludes us from estimating petitioner's expenses under Cohan. Petitioner did not offer testimony or documents to describe the nature and amount of the startup expenditures and business expenses that In Touch allegedly incurred during 2000, nor did petitioner offer the Court any credible explanation for In

Touch's failure to produce invoices, receipts, checks, or other business records during the audit or at trial.

We sustain respondent's determinations disallowing petitioner's deductions for professional fees, marketing expenses, and amortization.

IV.  Other Issues

Petitioner raised, and the parties briefed, two additional issues:  (1) Whether In Touch's members had sufficient bases to deduct their distributive share of In Touch's 2000 net loss and (2) whether property in the form of promissory notes contributed to In Touch was "at risk" under section 465(a).  Neither party disputed that these issues involved partnership items that we could properly decide in this partnership-level proceeding.

We decline to decide the remaining issues identified in this opinion for several reasons.  The first is that respondent determined in the FPAA that the bases of In Touch's members and their at-risk amounts as of December 31, 2000, were limited to $50,000, the amount of capital contributed as of December 31, 2000.  Because we have sustained respondent's determination disallowing the vast majority of In Touch's deductions for 2000, it no longer appears to be necessary for us to decide whether the members had sufficient bases or at-risk amounts to claim their distributive shares of In Touch's adjusted net loss.

We also question whether determinations regarding the members' bases and at-risk amounts satisfy the definition of partnership item. If they are not partnership items, we may not decide issues involving them in a partnership-level proceeding. Section 6221 provides that, except as otherwise provided in subchapter C dealing with the tax treatment of partnership items, the tax treatment of any partnership item must be determined at the partnership level. Section 6226(a) authorizes a tax matters partner to file a petition for readjustment of partnership items within 90 days after the date on which an FPAA is mailed to the tax matters partner. A partnership-level proceeding filed pursuant to section 6226(a) permits a court to consider and resolve partnership items and the proper allocation of such items among the partners. Sec. 301.6226(f)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6788 (Mar. 5, 1987).

Section 6231(a)(3) defines a "partnership item" as:

any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

In section 301.6231(a)(3)-1, Proced. & Admin. Regs., the Commissioner has provided guidance that amplifies the definition of partnership item contained in section 6231(a)(3). However,

section 301.6231(a)(3)-1, Proced. & Admin. Regs., does not

clearly answer the question of whether determinations regarding

contributions to a partnership's capital and the effect of those

contributions on the partner's basis and at-risk amounts are

partnership items.  See the discussion of section 301.6231(a)(3)-

1, Proced. & Admin. Regs., in Hambrose Leasing 1984-5 Ltd. Pship.

v. Commissioner, 99 T.C. 298, 306-312 (1992).

In Hambrose Leasing, we interpreted section 301.6231(a)(3)-

1, Proced. & Admin. Regs., in the context of determining whether

individual partners were at risk under section 465(b)(4).  After

carefully considering the provisions of section 301.6231(a)(3)-1,

Proced. & Admin. Regs., and the arguments of the parties therein,

we stated the following:

> We conclude, based on the circumstances of this
> case, that the determination of amounts at risk with
> respect to partnership liabilities personally assumed
> by individual partners is not a partnership item, but
> is an affected item, which can be dealt with only in a
> proceeding involving the partners and not in this
> partnership level proceeding.  Sec. 6226(f); N.C.F.
> Energy Partners v. Commissioner, 89 T.C. 741, 743
> (1987).  We base this conclusion on the definition of
> "partnership item" in section 6231 ("required to be
> taken into account for the partnership's taxable
> year"), our interpretation of the pertinent
> regulations, in light of the statute (an approach which
> makes it unnecessary for us to rule on petitioners'
> contention that the regulations are invalid), and the
> application of the statute and regulations in the
> decided cases.  In short, the application of section
> 465 as such is not an issue appropriate for a
> determination in a partnership level proceeding.  See

> Dial USA, Inc. v. Commissioner, 95 T.C. at 5 n.5. [Id. at 312; fn. ref. omitted.]

We have also considered a similar issue with respect to contributions of property to a passthrough entity and the effect of the contributions on the basis of individual members. In Dial USA, Inc. v. Commissioner, 95 T.C. 1 (1990), we considered whether a member's basis in an S corporation is a "subchapter S item" within the meaning of former section 6245.[12] We acknowledged that the partnership audit and litigation provisions contained in sections 6221-6231 "were, in effect, grafted onto the subchapter S audit and litigation provisions" by former section 6244, id. at 3, and we held that a member's basis in the passthrough entity was not an item "required" to be taken into account by the entity for the entity's taxable year, id. at 5-6.

We conclude that it is not necessary or appropriate to decide the basis and at-risk issues.

To reflect the foregoing,

> An appropriate decision will
>
> be entered.

---

[12]The subch. S audit and litigation provisions were repealed by the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1307(c)(1), 110 Stat. 1781, applicable to tax years beginning after Dec. 31, 1996.